# THE CITY OF CHICAGO

## v.

# WILLIAM W. GAVIN.

1. CONTRIBUTORY NEGLIGENCE—EVIDENCE.—The jury having by their verdict exonerated the plaintiff from the charge of contributory negligence, the court is not inclined, from what evidence appears in the record, to question the correctness of that finding.

2. PREVENTION OF ACCIDENTS—DUTY OF CORPORATION.—The officers of a corporation are not required or expected to do every possible thing that human energy or ingenuity can do to prevent the happening of accidents or injuries to its citizens. When they have exercised reasonable care, diligence, judgment and foresight in that regard, they have discharged their duty to the public.

3. DRAWBRIDGES—CONSTRUCTION OF BARRIERS.—In the management

of these dangerous passage-ways, the city is not bound to so construct and manage them as to render accidents impossible, but only to exercise such a degree of care, prudence and judgment as prudent and careful men may be reasonably expected to exercise in view of the dangers involved. The character of safeguards around such bridges must necessarily be left, in the first instance, to the judgment and discretion of the proper city officers, and it is only when they have failed to exercise reasonable care and prudence in that respect that the city can be held liable.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.

Mr. R. S. TUTHILL, for appellant.

Mr. PLINY B. SMITH, for appellee; that there was no contributory negligence on the part of the plaintiff, cited City of Chicago v. Major, 18 Ill. 349.

As to negligence on the part of the city: Shearman & Redfield on Negligence, § 250.

BAILEY, J. In this case William W. Gavin, an infant, by Ellen T. Gavin, his next friend, brought suit against the City of Chicago to recover damages for a personal injury alleged to have been caused by the negligence of the city. The plaintiff at the time of the injury was a child between three and four years of age, living with his parents on Butterfield street, Chicago, about midway between 18th and 19th streets, and in the vicinity of a quarter of a mile from the draw-bridge over the South Branch of the Chicago River, on 18th street. At about 10 or 11 o'clock in the forenoon of the 18th of June, 1874, the plaintiff and his brother, a boy about five years old, were with some other children on 18th street, at or near the bridge. The bridge, after being opened for the passage of a propeller, was closing, and had swung around sufficiently to bring a part of the roadway of the bridge opposite the roadway of the street, when the children, who were there, the plaintiff among them, ran upon the bridge, and whilst standing there or in the act of stepping off, the bridge being still in motion, the plaintiff fell, and caught his arm between the end of the bridge and the abutment, whereby his arm was so crushed as to render amputation necessary.

On the trial by a jury, under a plea of not guilty, the plaintiff recovered a verdict for $3,500, upon which verdict the court below, after denying the defendant's motion for a new trial, rendered judgment for the plaintiff. It is not charged that the employes of the city were guilty of any negligence in operating and closing the bridge in the manner in which it was done. The only negligence charged against the city, upon which the plaintiff bases his right to recover, was its failure to place and maintain a suitable barrier across the approach to the bridge, or to have such approach otherwise suitably guarded while the bridge was open. On the part of the city, it is insisted that the evidence discloses contributory negligence properly chargeable to the plaintiff sufficient to preclude a recovery. The jury by their verdict have exonerated the plaintiff from the charge of negligence, and have found the city guilty, as charged in the declaration. The question presented for our consideration is, whether this finding is sustained by the evidence. First: was there negligence on the part of the plaintiff? It is not disputed that at the time of the injury the plaintiff was of such tender years as to be personally incapable of discretion, and so no negligence is imputable to him, growing out of his own conduct. It is claimed however that he was negligently suffered by his parents to be upon the streets unattended by any person of sufficient discretion to guard him against the dangers to which he would thereby be exposed, and that such negligence of his parents must be deemed in law his negligence.

The evidence shows that his parents were at the time in humble circumstances, living in the second story of a small tenement house, and dependent for their support upon the daily labor of the plaintiff's father, who at the time of the injury was in a distant part of the city at work, and so were unable to employ a servant or nurse to attend to their children.

About two hours before the injury the plaintiff's mother was taken violently ill, and after suffering for a time, dispatched her oldest child, a daughter, then about eight years old, for a physician. According to the testimony of both mother and daughter, the physician came at about ten o'clock, and was in the house, according to the daughter's statement, about two

minutes, and according to the mother's, about eight or ten minutes. They both testify that as the physician came in they saw the plaintiff and another child, still younger, at play in an adjoining room; that as soon as the physician left they discovered the plaintiff's absence; that thereupon, the mother directed the daughter to make instant search for him; that the daughter at once went out, looked around the house, and returned with a report that she could not find him.

She then went out again, in obedience to her mother's directions, and proceeded at once to 18th street, only half a block distant, and on reaching that street, discovered a crowd of men about a block from the river coming towards her, bearing her brother with his arm broken. According to her estimate it was only about five minutes from the time she and her mother discovered his absence to the time she found him on 18th street. She however estimates the interval between the arrival of the physician and her discovery of the men bringing her brother from the bridge, at fifteen minutes or half an hour. If we are to rely upon the accuracy of the estimates of these witnesses as to the lapse of time, it is not easy to reconcile the fact of his being at the bridge, a quarter of a mile from home, with their statement that he was in the house so short a time before.

Plaintiff's mother admits that the brother who was with him at the bridge was not in the house so far as she knew. Although he was but five years old, she was ignorant of his whereabouts. She says she thought he was better able to take care of himself than his younger brothers, and so far as appears he was allowed to be upon the streets without restraint. That the plaintiff should have escaped from the house, joined his brother and made his way to the bridge within the very brief interval allowed by the testimony of these witnesses, is scarcely reconcilable with ordinary experience. We cannot say, however, that it was physically impossible, even if these witnesses are strictly accurate as to the lapse of time. Their estimate however may be, and probably is, far from being exact, and the jury having found plaintiff's mother guilty of no negligence in permitting his escape from the house, we are not disposed to disturb their finding in that respect.

The law will not hold parents, situated as were the plaintiff's, to as strict a rule in relation to allowing their children to be upon the streets of a city, or in providing them with suitable attendants to guard them from accident, as it would parents in more affluent circumstances. Moreover, the sudden illness of the plaintiff's mother may very properly have been regarded by the jury as affording, under the circumstances, a sufficient answer to any charge of negligence on her part.

Did the evidence then warrant the jury in finding the city guilty of negligence? There can be no doubt that a municipal corporation having by law the care, supervision and control of its public streets and bridges, is held to the exercise of reasonable care, diligence, judgment and foresight in so constructing and maintaining the same as to prevent injuries to persons traveling or rightfully being thereon.

· Such corporation however is not liable for every accident that may occur within its limits. Its officers are not required or expected to do every possible thing that human energy or ingenuity can do to prevent the happening of accidents or injuries to the citizen.

When they have exercised reasonable care, diligence, judgment and foresight in that regard, they have discharged their duty to the public. City of Centralia v. Krouse, 64 Ill. 19; City of Aurora v. Pulfer, 56 Id. 270. Both the South Branch of the Chicago River and 18th street are public highways, and the use of both by the public necessitates the erection and maintenance of a draw-bridge of substantially the character of the one in question. Such a structure cannot be maintained and operated without subjecting the public to some degree of danger.

This danger is one of the necessary incidents to the crossing of a highway over a navigable stream by means of a drawbridge. While it is doubtless the duty of the city in constructing and operating these dangerous passage ways to exercise a high degree of care and foresight in providing against accidents, it is not bound to so construct and operate them as to render accidents impossible.

All the law requires is the exercise of such degree of care,

prudence and judgment as prudent and careful men may be reasonably expected to exercise in view of the dangers involved.  The construction, mode of operating and character of safeguards surrounding such bridges must necessarily be left in the first instance, at least, to the judgment and discretion of the proper city officers, and it is only when they have failed to exercise reasonable care and prudence, that the city can be held liable.  In determining whether such care has been exercised, regard should be had not merely to the exceptional circumstances of a particular accident, but to all the various circumstances incidental to the use of such structures by the public.

The evidence shows that the bridge in question, and also the various other bridges over the Chicago River and its branches, have for many years, and probably from the time of their original construction, been operated and used without barriers or other guards across their approaches while open for the passage of vessels.

So far as appears this condition of things has elicited no complaint from the public, but seems to have been acquiesced in as being, all things considered, the best, most convenient and safest.

The evidence shows that the officers of the city have not been wanting in attention to the many devices for barricades which have from time to time been presented.    Mr. James K. Thompson, who has had entire supervision and charge of the bridges of the city nearly one half of the time for the last twenty years, testifies that perhaps one hundred of these devices were brought to his attention while in charge of these bridges, and that he had made experiments with several of them, but in case of every device tried the barricade was found to be the occasion of more accidents than it prevented, and was consequently abandoned.    It seems to be the deliberate judgment of the officers charged with the management of these bridges, after full investigation and experiment, that, considering all the exigencies of travel over them, they are really safer and expose the public to fewer accidents without than with any barrier yet devised.

We think the evidence fails to show that they are mistaken in this conclusion.   Doubtless after a particular accident has

happened, it can be easily demonstrated that a given device would have prevented it. But if it appears that such device might have been the means of occasioning other accidents equally severe, a failure to adopt it is not negligence.

It is however insisted that negligence is a question of fact for the jury, and the jury having determined that the absence of a barricade was negligence, their finding should not be disturbed. Doubtless negligence, ordinarily, is a mere question of fact, in respect to which the verdict of a jury, when supported by proper evidence, should be regarded as conclusive; but we cannot admit the application of this principle to the extent contended for.

The absurdities to which such application would lead are apparent. One jury passing upon the circumstances of a particular accident, may hold the city liable by reason of its failure to maintain a barricade of a given description. Acting upon such adjudication, the city may then erect the designated structure, and such structure may become the means of injury to some other person; and a second jury may award damages for doing the very thing the first jury required to be done. The question for the jury was, simply, whether the officers of the city were shown by the evidence to have failed to exercise reasonable care and prudence. We think their finding was unsupported by the evidence.

It should be remarked that the negligence of the city should be considered only in its relation to the particular dangers to which the plaintiff was exposed. Had the accident happened in the night time, or had the plaintiff been injured by falling from the abutment into the river, different considerations possibly might be presented. The accident happened in the day time, and when the bridge was so far closed as to bring the roadway of the bridge in part opposite the roadway of the street. The jury were to determine merely whether reasonable care and prudence would anticipate an injury happening at such a time and by such means, and provide against its occurrence by maintaining a barricade. The necessity of maintaining a barricade to prevent children or others from falling from the abutment, was not involved in the inquiry.

It is true, the plaintiff cannot be charged with negligence growing out of his own acts; still the law does not impose upon the city the duty of keeping its thronged streets and bridges in such condition as to be a safe play ground for children incapable of caring for their own safety. The performance of such duty, if required, would be wholly beyond its power. Such thoroughfares are fraught with dangers to little children who may be straying upon them without attendants, which no vigilance on the part of the city can provide against.

If they suffer injury while wandering upon such thoroughfares, even though no negligence may be imputable, unless such injury is caused by a want of reasonable care and prudence on the part of its officers. Otherwise the disaster, however lamentable it may be, must be borne by the party upon whom it falls.

In this case we fail to discover any want of reasonable care and prudence on the part of the city. The judgment therefore must be reversed and the cause remanded.

Reversed and remanded.